IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

MONICA TONELLI,              )
                             )
      Plaintiff,             )
                             )
      v.                     )          NO. 13-3041
                             )
CAROLYN W. COLVIN, Acting    )
Commissioner of Social Security, )
                             )
      Defendant.             )

OPINION

RICHARD MILLS, U.S. District Judge:

This is an action for judicial review, pursuant to 42 U.S.C. § 405(g),

of a decision denying the Plaintiff's claim for Social Security benefits.

Pending before the Court are the Plaintiff's Motion for Summary

Judgment and the Defendant's Motion for Summary Affirmance.

Plaintiff's motion is denied.

Defendant's motion is allowed.

I.

Plaintiff Monica Tonelli is a 30-year old woman with an eleventh-

grade education, who has a combination of medical problems including

bipolar disorder, borderline personality disorder, obesity, history of fracture to the left lower leg and patellofemoral syndrome.

The Administrative Law Judge, Carol Boorady, (ALJ) found that Plaintiff had the residual functional capacity (RFC) to perform work involving one or two-step tasks, with additional significant social and physical limitations. On October 9, 2012, the ALJ issued a decision finding that Plaintiff is not eligible for Supplemental Security Income payments, under Section 1602 and 1614(a)(3)(A) of the Social Security Act.

On January 3, 2013, the Appeals Council found no basis to review the ALJ's decision.

The issue before the Court is whether substantial evidence supports the decision of the Commissioner. See 42 U.S.C. § 405(g).

The ALJ found that Plaintiff has the RFC to perform light work as follows:

> can only occasionally lift up to 20 pounds; can only frequently lift or carry up to 10 pounds; can stand or walk for 6 hours in an 8-hour workday; can sit for up to 6 hours in an 8-hour workday; can only occasionally climb, balance, stoop, kneel, crouch, or crawl; can perform simple 1-2 step assemblies; limited to occasional contact with co-workers and supervisors;

2

and limited to occasional contact with the general public when contact is in person but no restrictions on contact with the general public through the computer or telephone.

R. 18.  Based on those limitations and other factors, the ALJ found that the Plaintiff is not disabled and there are jobs that exist in significant numbers in the national economy that she can perform.

The Plaintiff contends the ALJ erred in the following respects: (1) the ALJ failed to properly assess the Plaintiff's RFC; (2) the ALJ erred in according more weight to the opinion of the consulting psychologist than the claimant's treating counselor; (3) the ALJ failed to address the complete testimony of the vocational expert and did not explain why his opinion should not be followed; and (4) the ALJ used familiar boilerplate language that has been criticized frequently by the Seventh Circuit.

The Commissioner asserts the opinions of the consultative examining psychologist and the state agency psychologist supported the ALJ's RFC finding.  The RFC finding was also generally supported by the opinion of the treating counselor.  The ALJ also relied on the Plaintiff's improvement with conservative treatment, as well as her lack of hospitalizations, non-

3

compliance with treatment and daily activities.  The ALJ further observed that Plaintiff made a number of inconsistent statements that reflected adversely on her credibility.  The Commissioner contends that, upon considering these factors, the ALJ reasonably found that Plaintiff was capable of performing work under the limitations of the RFC finding.

## II.

### A. Standard of review

"The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."  42 U.S.C. § 405(g).  Pursuant to section 205(g) of the Social Security Act, the ALJ's decision must be upheld if it is supported by substantial evidence.  See Moore v. Colvin, 743 F.3d 1118, 1120 (7th Cir. 2014).  "Substantial evidence" includes "such relevant evidence as a reasonable mind accepts as adequate to support a conclusion."  Id. (citations omitted).  The ALJ's decision must include a "logical bridge from the evidence to the conclusions sufficient to allow . . . a reviewing court[] to assess the validity of the agency's ultimate findings and afford [the Plaintiff] meaningful judicial

review."  Id.  This Court may not substitute its judgment for that of the ALJ

"by reconsidering facts, reweighing evidence, resolving conflicts in evidence

or deciding questions of credibility."  Williams v. Apfel, 179 F.3d 1066,

1071-72 (7th Cir. 1999) (citation omitted).

B. Analysis

(1)

The Plaintiff contends that the ALJ has failed to articulate her work-

related functions given the Plaintiff's mental impairments, as required by

Social Security Ruling ("SSR") 96-8p.  Additionally, the Plaintiff claims

that the ALJ did not make the specific findings regarding her ability to

perform basic work-related activities, as required by SSR 85-15, which

provides in pertinent part:

> The basic mental demands of competitive, remunerative,
> unskilled work include the abilities (on a sustained basis) to
> understand, carry out, and remember simple instructions; to
> respond appropriately to supervision, coworkers, and usual work
> situations; and to deal with changes in a routine work setting.
> A substantial loss of ability to meet any of these basic work-
> related activities would severely limit the potential occupational
> base.  This, in turn, would justify a finding of disability because
> even favorable age, education or work experience will not offset
> such a severely limited occupational base.

5

The Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence.  She notes that, in determining the Plaintiff's mental limitations, the ALJ relied on the following factors:

- No history of hospitalizations or significant suicidal or homicidal ideation reported to mental health providers throughout the period of disability, no record of her alleged suicide attempt in 2011.
- Plaintiff saw Frank Froman, Ed. D., in September 2011 and did not report homicidal or suicidal thoughts.
- Plaintiff started seeing therapist Jan Frageman, LCPC, in October 2011 due to a court order.
- Plaintiff started seeing psychiatrist Salvador Sanchez-Zuniga, M.D., in January 2012 and he noted her medications were effective and her mood and effect were improved, euthymic and stable in March 2012.
- Although Plaintiff reported difficulty controlling her anger and mood swings in August 2012, they did not adjust her medication, "indicating medications were adequate."
- Plaintiff failed to attend appointments, indicating "her symptoms may not be as problematic as she alleges."
- Plaintiff's subjective complaints cannot be trusted because they cannot be "objectively verified."

The Plaintiff notes the fact that she has not been hospitalized is not probative of her ability to work.  Moreover, although Dr. Froman reported the Plaintiff is neither homicidal now suicidal, she did report that she had thoughts of hurting herself and stated "there are times that I don't want to

6

be here anymore."

The Plaintiff further alleges the fact that a court ordered her to see a therapist would support more restrictive limitations.  A court would not order treatment unless it felt the person was severely limited.

The Plaintiff further contends that although her mood and effect may have been "improved, euthymic and stable in March 2012," she subsequently reported difficulties.  Moreover, her medication was adjusted by Dr. Sanchez-Zuniga.  Additionally, the ALJ's reliance on the fact that she did not attend appointments demonstrates a misunderstanding of mental illness.  Finally, although subjective complaints cannot be verified, the ALJ cannot simply discount them.  See SSR 96-7.

Additionally, as acknowledged by the ALJ, the Plaintiff's Global Assessment of Functioning ("GAF") score was consistently found to be 50.[1] According to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, a GAF score of 41-50 denotes

[1] On three occasions, Ms. Frageman assessed GAF scores of 50.  Dr. Froman and treating psychiatrist Dr. Sanchez-Zuniga also assessed GAF scores of 50.

"serious symptoms or any serious impairment in social, occupational, or school functioning."  The Plaintiff contends that courts must consider an individual's GAF score history and a history of scores below 50 is evidence of disability.

The Plaintiff's consistent GAF score of 50 indicated severe symptoms, though it was only one point away from indicating moderate symptoms. Because GAF scores are not static and depend on how the individual feels on the day she was examined, see Voight v. Colvin, 781 F.3d 871, 875 (7th Cir. 2015), it is somewhat noteworthy that Plaintiff's scores were so consistent.  However, GAF scores are used in making treatment decisions and do not reflect the clinician's opinion of functional capacity.  See Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010).

The Commissioner notes that Plaintiff's most recent GAF score was assessed by Ms. Frageman as 55, which denotes only moderate symptoms. Although the GAF scores cited by the ALJ suggest serious symptoms or serious impairment in functioning, the ALJ noted that Plaintiff has received appropriate medical treatment which has improved her ability to interact

with others.  Additionally, the ALJ pointed to the conservative treatment and minimal objective evidence in support of her determination.

(2)

The Plaintiff further notes that therapist Jan Frageman, on August 9, 2012, opined that Plaintiff had moderate limitations in making judgments on simple work-related decisions, understanding, remembering, carrying out and making judgments on complex work-related decisions and interacting appropriately with the public, supervisors and coworkers, as well as responding appropriately to usual work situations and to changes in a routine work setting.  The ALJ gave Ms. Frageman's findings as to moderate limitations some weight.  According to the Social Security Administration Medical Source Statement form, "Moderate" is defined as follows:

> There is more than a slight limitation in this area but the individual is still able to function satisfactorily.  An assessment of Moderate means the impairment will interfere with the individual's ability to perform work-related activities twenty-to-thirty percent of the time.

Dr. Froman, the SSA consultative examiner, observed that Plaintiff cried during the whole evaluation.  The Plaintiff also made the statement

about not "want[ing] to be here anymore."  Dr. Froman concluded that Plaintiff does not appear able to relate effectively to others, and will likely not be able to do so until such time as she is appropriately treated medically."

Dr. Sanchez-Zuniga conducted a psychiatric evaluation on January 19, 2012.  The Plaintiff stated her prescription medication was ineffective and she could not afford it.  She reported she has a history of cutting herself–the last time was approximately ten months earlier.  The Plaintiff was diagnosed with bipolar disorder, NOS and borderline personality disorder traits.

In March of 2012, Dr. Sanchez-Zuniga observed that Plaintiff's medication was effective, her mood was improved, eurythmic and stable, and she had good energy, appetite and sleep.  When the Plaintiff was having problems or feeling depressed, her medication was adjusted.

The Plaintiff notes that, despite ongoing treatment with Ms. Frageman and medication compliance, she reported in April of 2012, June of 2012 and August of 2012 that she was still experiencing depression,

irritability, trouble with her anger control and mood swings and Dr. Sanchez-Zuniga changed her medications to try to help.  Although she may have reported doing better at certain times, the Plaintiff alleges this is part of the cycle of bipolar–there are good days and bad days and emphasizing only the good is consistent with the tendency of some ALJ's to ignore those portions of the record that do not support the desired outcome.

The Commissioner contends that the ALJ's RFC finding is fully supported by the opinions of consultative examining psychologist, Dr. Froman, and state agency psychologist, Leslie Fyans, Ph.D.  Moreover, the RFC finding is generally supported by the opinion of the treating counselor, Ms. Frageman.  The ALJ also relied on the Plaintiff's general improvement with routine or conservative treatment and her lack of hospitalizations, her non-compliance with certain treatment, and her daily activities and inconsistent statements.  The ALJ observed that the type of treatment the Plaintiff received was generally not consistent with what one would expect for a disabled individual.

The type of treatment that a claimant receives is a factor which may

11

be considered in determining disability.  See 20 C.F.R. § 416.929(c)(3)(v); see also Hofslien v. Barnhart, 172 F. App'x 116, 120 (7th Cir. 2006) (noting that the ALJ may consider an individual's conservative treatment in determining disability).  The ALJ noted that after March of 2012, instead of being treated by Dr. Sanchez-Zuniga, the Plaintiff generally met with a nurse for medication monitoring.  The ALJ further observed that the record does not show an increase in the frequency of treatment, group therapy, temporary holds, or emergency room visits.  Accordingly, the Plaintiff's conservative treatment was a legitimate factor and properly considered by the ALJ.

The Plaintiff correctly notes that an individual who suffers from a mental illness will have good days and bad days and the fact that she has a "good day" does not mean she is not disabled.  However, it is worth noting that the ALJ is not simply pointing to a few good days in citing her relatively conservative treatment.  This is typical throughout the course of her treatment.

The Court recognizes that, in certain circumstances, an individual's

failure to comply with treatment or take medication can be a symptom of one's illness.  That was the case in Mendez v. Barnhart, 439 F.3d 360 (7th Cir. 2006), wherein the Seventh Circuit rejected the ALJ's reliance on a psychiatric patient's failure to follow through on treatment, stating that was a "common consequence of being psychotic and is especially to be expected of a person with a very low IQ."  See id. at 362.  The Plaintiff here was not diagnosed as psychotic or as having a very low IQ.  To the extent that this Plaintiff claims her failure at times to comply with treatment was a symptom of her illness, the Court does not believe the record supports that assertion.

The ALJ noted that, although the Plaintiff reported being fairly limited with respect to her daily activities, such evidence is of limited value. One reason is that it is difficult to objectively verify an individual's reported daily activities.  Another reason is that an individual's daily activities, if limited, could be limited for reasons other than her medical condition.  The Plaintiff reported fairly routine daily activities which are consistent with the ALJ's findings.

13

The ALJ also cited some inconsistencies in the Plaintiff's testimony when compared with other record evidence.  The Plaintiff provided two different accounts as to why she lost her driver's license.  The Plaintiff also gave conflicting accounts regarding some of her daily activities, including whether she cared for her fiance's disabled father.  Additionally, the ALJ noted that although the Plaintiff testified she has had thoughts of hurting others, the record does not show that she has previously reported these thoughts and she has denied having such thoughts.  Because of these inconsistencies, the ALJ found that information provided by the Plaintiff suggested she may have exaggerated the extent of her symptoms and the information was not entirely reliable.

For these reasons, the ALJ found that Plaintiff was not entirely credible and was capable of abilities included in the ALJ's RFC finding.

(3)

The Plaintiff also alleged that the ALJ committed reversible error in according more weight to the opinion of the consulting psychologist than that of Jan Frageman, the Plaintiff's licensed professional counselor.

14

However, the record shows that the ALJ considered the opinions of all of the Plaintiff's treating sources.

The ALJ gave significant weight to the opinion of Dr. Froman, who thought that Plaintiff was capable of performing simple one or two step assemblies at a competitive rate.  He observed that the Plaintiff's difficulty relating to others needed to be treated medically.

Dr. Fyans also opined that Plaintiff could perform one and two step tasks at the level of substantial gainful activity and she could understand and recall all but the most complex or detailed instructions.  Dr. Fyans also advised that Plaintiff should have a socially restricted setting with a moderate limit on social expectations.

The ALJ accounted for Dr. Froman's and Dr. Fyans's opinions by restricting the Plaintiff to only occasional contact with coworkers and supervisors and only occasional in-person contact with the public.  The Commissioner points to both of these opinions as constituting substantial evidence supporting the ALJ's RFC finding.   See 20 C.F.R. § 416.927(e)(2)(i) (noting that state agency psychologists are "highly

15

qualified . . . psychologists . . . who are also experts in Social Security disability evaluation").

Additionally, the ALJ's restrictions on contact with others is generally consistent with Ms. Frageman's assessment of moderate limitations in that arena. It was also generally compatible with Ms. Frageman's opinion that Plaintiff was only mildly limited in her ability to understand, remember and carry out simple instructions and moderately limited in her ability to make judgments on both simple and complex work-related decisions; understand, remember and carry out complex instructions and respond to changes in a routine work setting. Based on each of these limitations, the ALJ restricted the Plaintiff to simple one and two step assembly work.

Although Ms. Frageman noted moderate limitations that would interfere in some respects with the Plaintiff's ability to work, the form provided that individuals with moderate limitations are still able to "function satisfactorily." As the Commissioner alleges, while these limitations might affect performance 20 to 30 percent of the time, the individual would still be able to perform the task satisfactorily. To at least

some extent, therefore, the ALJ's decision accounts for the moderate limitations noted by Ms. Frageman.  Additionally, it was fully consistent with the opinions of Drs. Froman and Fyans.

(4)

The ALJ found that Plaintiff has no past relevant work.  Upon considering her RFC and other factors, the ALJ found there are jobs existing in significant numbers in the national economy that she can perform.

Given the Plaintiff's limitations, the ALJ asked the vocational expert whether jobs exist in the national economy for an individual with the Plaintiff's age, education, work experience and RFC.  The vocational expert stated that Plaintiff could perform unskilled, light jobs such as: assembler (DOT# 706.684-022) with approximately 200,000 in the national economy; hand packager (DOT# 559.685-018) with approximately 150,000 nationally; and cleaner/maid (DOT# 323.687-014), with approximately 250,000 nationally.

Although Ms. Frageman noted that Plaintiff had various moderate limitations that would interfere with her abilities 20 to 30 percent of the

time, an individual in those circumstances is still able to function satisfactorily despite the limitation.    In finding that Plaintiff was significantly limited in the type of work she could perform, the ALJ generally accounted for Ms. Frageman's limitations.

Based on the foregoing, the Court concludes that the ALJ's RFC finding was consistent with the opinions of Drs. Froman and Fyans and Ms. Frageman.

(5)

The ALJ uses the same language found in a number of recent cases:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.

See Tr. 23.  The United States Court of Appeals for the Seventh Circuit has described this or similar language that frequently appears in ALJ's opinions as "meaningless boilerplate."  See Parker v. Astrue, 597 F.3d 920, 922 (7th Cir. 2010).

18

In asserting that the ALJ properly considered the Plaintiff's credibility, the Commissioner notes that the often-criticized boilerplate language alone is not enough to warrant reversal and support a finding of disability.  The use of such language is harmless if the ALJ provides additional reasons for her finding.  See Filus v. Astrue, 694 F.3d 863, 868 (7th Cir. 2012); Shideler v. Astrue, 688 F.3d 306, 311-12 (7th Cir. 2011). Thus, a remand is not necessary if the ALJ's credibility assessment is otherwise supported.

Because the ALJ cited portions of the record in support of her credibility determination, however, including the opinions of Drs. Froman and Fyans and Ms. Frageman, the Plaintiff's generally successful and conservative treatment, lack of hospitalizations, non-compliance with treatment, daily activities and inconsistent statements, the Court concludes that the ALJ adequately supported her credibility determination.

### III.

For all of these reasons, the Court finds that substantial evidence supports the ALJ's decision.

Ergo, the Plaintiff's Motion for Summary Judgment [d/e 11] is

DENIED.

The Defendant's Motion for Summary Affirmance [d/e 15] is ALLOWED.

The Clerk will enter a Judgment affirming the decision of the Commissioner of Social Security.

ENTER: February 25, 2016

FOR THE COURT:

s/Richard Mills
Richard Mills
United States District Judge

20